Good morning, Your Honors. Michael Drake for Ronneld Johnson. I'd like to start with his Jackson claim, which I think is much more straightforward than I realized when I wrote the briefing. He didn't commit the robberies in association with the gang because he wasn't a member of the gang and because there's no evidence that the gang knew anything about him or knew anything about these robberies. And he didn't commit the robberies for the benefit of the gang because even if you give the gang officer who testified his generic premise that violent crimes by gang members benefit the gang by making the community fear it, there's just no evidence that the community was ever going to learn that these robberies had anything to do with any gang. The visible gang had tattoos. The visible tattoos? Yes, they had visible tattoos, but there's no evidence that anyone saw them. But also he didn't have visible tattoos of the gang that they're saying was being benefited. That's right. He had visible tattoos of a different gang. That's right, and that's a really critical point. I mean, I think that People v. Prunty is really important in this respect because Prunty says that Section 186.22b requires that, quote, requires that the criminal street gang the prosecution proves to exist be the same gang that associated with the defendant in connection with the crime. That's the in association with Prunty. Right. But the other one is the for-benefit Prunty. Right. How do you square that? With the tattoos? The tattoos were never seen. Oh, it's not just the tattoos. They were in the gang's territory. Right. It was broad daylight. It was a fairly brazen robbery. Right. Well, robberies are often brazen, but there's no connection between that and gangs. And so just to take the first thing that you mentioned was? They were in the gang's territory. Yeah, the territory. So I go into this a little bit, this topic, in the opening brief at pages 31 and 32, I think, pages four or five of the reply brief. Ramon and Franklin are both cases that involved crimes that were committed within gang territory. And it's just not an important factor. It's not an important factor? No. I mean, it can be in cases where they're there. It seems to me that if you weren't in gang territory, that would be a really important factor. If you weren't? Well, yeah. Well, there's always a ration. There's always a rationalization. It would be an important factor. But the question is whether if it's the only factor. What is the question here with regard to the tattoos? Somewhere, I guess, in the hypothetical that was asked to the gang expert, it said that his the gang tattoos were covered. Were they covered or not covered? Your Honor, I'm not sure whether I think I think that there was. I'm not sure. I think that there was evidence that they might have been covered, but I don't know why that is. I think. Yeah. I mean, I think that it doesn't matter ultimately, because there's no evidence that anyone saw them. So from the standpoint of gang benefits. What do you mean by anybody saw them? If they were visible, people saw them. Well, the victims didn't see them. You mean because they were too close or something? No, there's just no evidence that anyone realized that there's no evidence that the victims both testified, or the gardeners testified. There's no evidence that they saw the tattoos. So to me, they're big. And I think it's quite possible, even probable that given the way the California Courts of Appeals are deciding these cases now, most of the courts of appeals would have found that there was that this was not sufficient. But we have an Edpert problem. So I think you need to address that. Right. Well, I think that double deference, triple deference, there's no way to make this evidence work. Because anything times zero is zero. I mean, there is nothing here. And I mean, just to go back to territory, territory can be an important in the cases that it is important in. It's when there is some indication that there's gang rivalries. And so there's territorial disputes, that sort of thing. That's when territory becomes important. There's not a single case that I'm aware of. And I don't think the warden cited a single case where territory was a, you know, was a dispositive factor. It's always in connection with other salient features, you know, characteristics of the crime, including... The only opinion of the state that we have on this is the State Court of Appeals on direct appeal, right? And discursive opinion that says... In this case, yes. That's right. That's right. So it needs to be unreasonable. What's unreasonable about it? It's unreasonable because it doesn't say, I mean, it relies on arguments that just are unsound. Right. So can you be specific about that? Yeah. So, so it dismissed all of the negative evidence that would usually be dispositive in a California case. The lack of gang signs, gang symbols, shouting gang names and so on. The lack of, I mean, the lack of anything that would indicate that there was anything gang related about this other than the gang relationship, the gang membership of John King, Jonathan King. So that alone would, in most cases, I mean, in all cases, in all published cases, that's it. The fact that, so then they said... As to the association issue, what they ultimately concluded was they committed the robberies in association with a gang member. Does that meet the standard? No, it doesn't. No, that might meet prong two. That might meet the specific intent prong. All right. But it doesn't meet the association standard because it has to associate with a gang, not with a gang member. Right. Right. It has to be association with fellow gang members. So if we were to say, so presumably we could say that that's just, it doesn't, but you see, the other problem here is that we're dealing with a state statute. Right. So we have to be able to say that their conclusions about what meets the state statute are our problem and that we can critique that. Well, I think, I mean, we look to the controlling California Supreme Court authority. So the fact that there's an unpublished decision in this case that's ruling against controlling... But the California Supreme Court had a shot at correcting this if they thought there was a problem. Right. That's always the case, Your Honor. But I mean, I don't think there's any, I don't think that's convincing. You're asking us to correct errors that California has declined to correct. Indeed, Your Honor. But I mean, I think the question is whether there's any convincing evidence that whether the California Supreme Court, if it had heard this, had heard this case and considered it in more than... The California Court of Appeals pointed to several things. One was the tattoos. Even though they weren't seen by the victims, the fact was that the tattoos were in visible places, they said, on the faces. So the fact that the victims didn't see it was not critical to them because they could have been seen. They used the word cuz to evidence their CRIPS membership. And they pointed out that it was indeed in gang territory. Now, those are the things the California Court of Appeal thought significant enough to qualify under California law. So what in California law would tell us that this is so wildly wrong that we can correct this under a Jackson versus Virginia standard? Well, I cite the published cases where there are tattoos that were visible and they say that's not sufficient. I think it's... I don't understand the tattoo thing because there's a sloppiness in the whole way this is written that forgets the fact that he's not in the gang. So if he has tattoos from a different gang, because they're quite clear about the fact that the gang that's being benefited is the Project Watts CRIPS. Right. So if he's walking around with tattoos from a different gang, how is that benefiting Project Watts CRIPS? It doesn't either way, Your Honor. I mean, if he had PJ CRIPS tattoos, it wouldn't... Well, forget that. He doesn't. That's the problem. The other guy did, but he didn't. Right. Right. So, but I mean, I cite cases in the briefing. I think it's Ochoa. I'm not sure. And I think the fact that tattoos are visible, even if they were gang tattoos, weren't gang tattoos, that wouldn't be enough. The word cuz doesn't tell us anything that we didn't already know. We know that Jonathan King was in a gang that's... Who's the one who said cuz, by the way? Who? Who said? We don't know. We don't know. One of the two. So, I mean, even if, you know... But it's also not clear who he said it to. He might've said it to the victim. Yeah, we don't know. The victim thought he was saying it to the victim. So, here's the problem. The arguments that you've made are really good arguments. They're good arguments that should be made to a jury. They should have been made to the trial judge. They should have been made to the Court of Appeals. They should have been made to the California Supreme Court. The one court... Two of those three courts have looked at that and said, this is sufficient to satisfy California's standard. Now, how do we correct that? You correct it by... I mean, the question here is whether any fair mind jury... Do you think that it is a clear violation of Jackson v. Virginia? Yes. There is nothing here... And there isn't anything in Jackson v. Virginia that speaks to gangs. I mean, there's nothing there that's going to help you. That is a standard about the sufficiency of evidence. Sure, and it's a standard about... And it's not a no-evidence standard. But how do we contradict a California court interpreting California law when it says, this is sufficient under California law to merit the punishment? And how do we come back and say, oh, no, it's not? Well, so the... I mean, it's... The bottom line is we're not interpreting California law when we say that this argument is not sufficient to bring the conduct under... Within the California statute, under the standard of Jackson. Slightly off, though. I mean, to the side question. Has anybody ever challenged the benefit thing of unbeggedness grounds? I don't have any idea what it means. Yes, I believe it's been challenged, and I don't know what the... It just seems... I mean, one of the reasons we're struggling with this is that it's so totally... Yes. ...fame, actually. Yes, I've wondered it myself, but... Right. When I was appointed... Do you want to say anything at all about the Dixon issue? I'm sorry? Do you want to say anything at all about the Dixon issue? Just that the warden hasn't really disputed that the... But then I have Judge Bybee's problem in spades. I mean, how do we tell the California Supreme Court that it misapplied its own standard? Procedural standard. That's what you're asking us to do. You're asking us to say that they misapplied the Dixon standard. Yes, I mean, the case on that point... What's happened here? I've lost my... I have a case. I think it's CVAC versus... Let me see if I can find it real quick. Sorry. Just I'll grab that case for you, and then I'll sit down. Right. CVAC versus Hardison, 658F3, 898 at 907. That's Ninth Circuit, 2011. And basically it says that part of deciding whether the procedural rule is adequate is deciding whether it's been properly applied in this case. I'll sit down now. Okay. Thank you. Morning. Morning, Your Honors. May it please the Court, Charles Lee for the warden. I'll start with the sufficiency issue as well. Given the time, place, and manner in which this crime was committed, a rational juror could absolutely find beyond a reasonable doubt that appellant committed the crimes either for the benefit of or in association with the Project Watts Crips. And certainly... Well, I mean, the first question, of course, is why would he? I'm sorry? I mean, you have to start with a healthy disinclination to believe that this member of a different gang was committing the crime for the benefit of the Project Crips gang. Isn't that a sort of counterfact that has to be overcome? Why would he? Well, I think this is where the gang expert's testimony is important because Officer Carias testified that it's normal for him. You know, the California cases have become extremely skeptical of these experts for good reason. What he says is just totally vague and conclusory. That's fair, Your Honor. But I think he was cross-examined on that issue, and that's an issue that was for the jury to decide. And what he testified to was that it's normal for members of different cripsets to work together. Right, to meet each other in prison. But I thought that was totally missing. That's true. They know each other, and so they're doing it together. But how does that prove they're doing it for the gang? He completely failed on that point. He explained why they knew each other and they would do crimes together but not why they would do crimes together for the benefit of somebody else's gang. Well, I think the way that the crime was committed kind of sheds light on that because this was committed on Project Watts territory, again, with a Project Watts gang member. And as Judge Bivey said, this was in broad daylight and committed in a very brazen manner. This was 9 o'clock in the morning in a residential area where presumably there are people walking around, people in the neighborhood who can see them. And that's enough evidence to conclude that it was being done for the benefit of the gang? Because one of them is a gang member and it's in the area where his gang operates. But we're dealing with the other one. There's certainly plenty of evidence with regard to the other guy, but we're dealing with the one who's not a member of that gang. Well, that's true, Your Honor. We don't know why he worked with a member of the other gang. It could be for personal reasons, or it could have been from a past personal relationship. It could have been their gangs had a relationship. It has to be. My understanding of California law is that the conclusion of the California Court of Appeal was wrong. The question isn't whether he did it in association with a member of a gang. It's a question whether he did it in association with a gang, right? That's right, but that encompasses— So their conclusion is unreasonable because it's not what the statute requires? No, Your Honor, because if he commits a crime with a member of a gang— Well, but in all those cases it was with a member of the same gang, not a member of a different gang. I mean, it's one thing to infer that when two people who are— is there any case in which it was inferred from the fact that it was a member of a gang that he was not a member of, that he was doing it in association with a gang? Not that I know of, not on these specific facts. Right, exactly. But I would also point out that under California law, you don't have to be a member of a gang at all to be subject to a gang enhancement. I understand that, but the question is what's the evidence that he was doing this not only in association with a member of the gang, but in association with the gang? What's the evidence? I think the evidence is what we have here. He committed a crime with a gang member on gang territory. With a gang member of a different gang. I mean, that's what keeps getting left out of the sentence. Right, right. And I understand we don't have evidence about what his motive is for working with a different gang. We can only judge him by his actions. Okay. And he acted in a way that, in addition to being in association with a gang, in a way that would benefit the gang. Because, again, this was a brazen public crime committed on gang territory. And what the officers testified was this sends a message to people in the neighborhood of fear and intimidation. It sends a message to other gangs of fear and intimidation. It also shows, going back to the association problem. Well, let me ask you something. For the benefit of the gang, does that have a motive notion? It does. It has to be not simply that it could benefit the gang, but that he is for the benefit of the gang, meaning he meant to benefit the gang. Right? No, Your Honor. Not under the first prong of the gang enhancement. For the benefit of the gang, you only have to show that it benefits the gang somehow. Under the second prong, the specific intent element. No, the specific intent is not about benefit. It's about whether he specifically intended to commit the crime, essentially. Specifically. There's a second element in which appellant is not challenging, which is specifically intending to benefit the gang. No, it's not specifically intending to benefit the gang. I'll find it in just a minute. It's not the language. But go ahead. Okay. But in any event, the way that the crime was committed shows that not only was he committing it with a gang member, he was taking advantage of the gang's apparatus. And this is something that people versus LBR, the California Supreme Court case, talked about. When you're looking at whether a crime was committed in association with a gang, you look at whether you were taking advantage of the gang's apparatus to commit the crime. Now here, being on gang's territory shows that you're taking advantage of the gang's apparatus because they knew that if they were on Project Watts' territory, they could do whatever they want, and this is exactly how they acted. They acted like they could do whatever they want because an appellant walked up to the first victim, Guerrero, in the middle of the street, in broad daylight, pointed a gun to his face. He made no attempt to cover his face. Just to go back to the specific intent provision is to promote further or assist in any criminal conduct by gang members. It doesn't say anything about for the benefit of the gang. So for the benefit of the gang is in the first part, and it seems to me to necessarily have committed for the benefit of. That means that's why you did it, no? I think you just have to show that the crime you committed benefited the gang. That's not what it says. It doesn't say that. It says for the benefit of. Right. Which doesn't say a crime that benefited the gang. It says for the benefit of. Well, I think you have to be aware that you're working with another gang member or you're working on behalf of the gang. Right. Okay. So what's the evidence of that? Well, the evidence, again, is he was working with a gang member on gang territory and he committed a crime in a public and brazen manner. Now, appellant mentions, you know, cases where, such as people versus Ramon, people versus Franklin, where being on gang territory is insufficient. But the way the crime was committed matters because in people versus Ramon, the defendants were driving in a car in gang territory, driving an unregistered vehicle in gang territory with an unregistered weapon on it. Now, that's a pretty discrete crime. It's not a crime that kind of sends a message to the public or to people in the neighborhood. Another thing that the California Court of Appeals said that seemed to me to be quite unreasonable is that the fact that they didn't make gang signs or that there's any evidence they told anybody that there was a gang that was doing this doesn't matter because they were doing this so as they wouldn't be known who they were or that they were doing it for the gang. But, of course, if it's not known that they're doing it for the gang, then that means it's not for the benefit of the gang because nobody's going to know that the gang was involved. So how does that make any sense? So there's several... It's completely nonsensical. Well, first, I think Officer Akari has testified again that, you know, gangs were evolving away from using gang signs, announcing their gang status because they realized that... Well, that's true, but if they're not... I understand that and that... But then if they're not going to reveal their gang status, then that greatly detracts from the notion that it's for the benefit of the gang in its sense of a reputational interest because they're not telling anybody that the gang's involved. So they may have a motive for doing it that way, but it eliminates most of the notion that it's being done for the reputational interest of the gang because they're hiding the fact that it was done for the gang. That's true, Your Honor, and that does make sense. That's true. So, therefore, it's a crazy, stupid statement. It makes the evidence weaker, certainly. No, it doesn't only make the evidence weaker.  that it's for the benefit of the gang because they're hiding that it's for the benefit of the gang. That's just a circular, non-sequential statement. Well, to be clear, I don't think the officer was saying that that includes... I'm not talking about the officer saying it. I'm talking about what the California Court of Appeals said. I understand, Your Honor, but I think if you go back to the manner in which the crime was committed, again, this was a public brazen crime. I'm trying to find out whether the California Court of Appeals' decision was unreasonable, and I want you to explain how that reasoning is not unreasonable. It's not unreasonable because the fact there's no bright-line rule in California that separates a gang-related case from a non-gang-related case. So the mere fact that a gang does not announce its name or give gang symbols does not mean that the crime was not gang-related. You still have to look at the totality of the circumstances, and in these circumstances, again, this was a public crime committed in a way... Okay, but they say that self-identification during the commission of a crime can't be an essential requirement because such a requirement would allow gang members to get around the gang enhancement. So, true, but if they don't self-identify, then how are they doing it for the benefit of the gang? At least you'd have to show that they were telling... There's no evidence they ever told anybody ever, right? That's true, but I would point out... How could it be for the benefit of the gang? Who's getting this reputational information that's going to benefit the gang? Well, again, you have to look at the way that the crime was committed because this was committed in a way in which they didn't care if anybody saw them. In fact, they wanted people to see them. And if you're someone who's living in a gang neighborhood, in a gang-infested area that's controlled by the Project Watts groups, you know not to talk to a Project Watts gang member, not to call the police when a crime is committed. And if you hear about a very public brazen robbery where two people were robbed in the streets at gunpoint, and the defendants... And as to the guy who's not even a member of the gang, people are going to infer that he was doing it for the benefit of the gang. He wasn't a member of the gang. But one of them was a member of the gang. One of them was. And the second person was actively helping him. In fact, he was the person holding the gun. And so when they were acting like they can do whatever they want on gang territory, if you're somebody living in that neighborhood, what you're going to know is that that was the Project Watts group. And you can do that without any evidence that anybody did know any of that or did make that inference or anybody at all ever concluded that this person who's not a member of the gang was doing this to benefit the gang? I think the key evidence is not whether anybody knew about it. It's that they acted in a way that they didn't care if anybody knew about it. I'm sorry, what? The key evidence, Your Honor, is not that anybody in the neighborhood knew about it. It's that these defendants acted in a way in which they did not care if anybody knew about it, and they wanted people to know about it. Because, again, this was 9 o'clock in the morning, busy residential area. They made no attempts to cover their faces, broad daylight. And I would also point out they were arrested the very next day driving the same car in the same neighborhood that they used to commit the robbery. Not very good criminals, are they? Well, I would argue the opposite. I think a normal criminal who commits a robbery would do it at night. They'd try to cover their faces. They'd try to get away as quickly as possible. They would not return to the neighborhood, as Your Honor mentioned. So I think that's why this shows it's a gang case, because these were gang members. This was their territory. They didn't care if anybody saw them. They didn't care if anybody saw them. It wasn't like these guys were exactly high-value targets either. Right, Your Honor. And I think where these defendants may be. Tell me what for the benefit of the gang means. For the benefit of the gang. That this is a gang case. Right. Does that mean it's for the benefit of the gang? What does that mean? If they acted in a way that furthers the gang somehow. That furthers what? That furthers the gang's primary activities or helps the gang in some way. And so in this case, gangs thrive by fear and intimidation. And what they did here, the way they committed this crime, it increases the level of fear and intimidation in the neighborhood, and it also sends a message to other gangs that these are people who don't care, who are willing to commit public, violent, brazen crimes. And I would also point out that you don't have to – there's two separate elements we can show here. So even if Your Honor finds that the benefit standard isn't met, we can still show that it was committed in association with a gang member. And again, they used the gang apparatus, which was the gang territory, in a way which led them to commit the crime with impunity. The problem with the in-association, though, is you don't have two people of the same gang, and you don't have one case to cite where two people of different gangs met the in-association criterion, correct? That's true, Your Honor. So you're asking us to make new law? Well, I would just ask Your Honor to – or remind Your Honor that there's also no bright-line law saying that the factors you look at is whether they, again, use the common gang apparatus and also just the totality of the circumstances. So I think if Your Honor were to hold that members of two different gangs could not commit crimes in association with each other, I think that would be making new law. Well, members of the crime can certainly commit crimes in association with each other. The question is why that means that the person who's not a member of the gang is associating with the gang and not with a member of the gang. I think because he was acting in a way, again, on gang territory and in a way – committing the crime in a way that shows it was a gang-related crime. And I think, again, this is where the officer's testimony is important because he said it's normal for members of different gangs, different crip sets to work together. And I think that's important because if he had testified, the officer – Yeah, thank you. Your time is up. Thank you, Your Honor. I gather you don't want to say anything about the Dixon point. I'll just say really briefly first that the claim is forfeited because this was an argument that was raised for the first time on appeal. It was never raised in district court. You mean the argument that they improperly appelled Dickson? That argument? Right. Improperly. The idea that this claim falls under a constitutionality exception in Dixon. I see. And I would also point out that in Dixon, the constitutionality exception applies to challenges – facial challenges to the constitutionality of a statute. The allegations that the applicable statute itself is unconstitutional. Here, appellant is not arguing that the three strikes law is unconstitutional on his face. He's saying it's unconstitutional as applied to him. So that's not a facial challenge. Well, more than that, as applied to somebody – as applied to the use of a juvenile conviction, but you sort of have to put two statutes together to get there. Right, but that's still only challenging a part of the statute and only challenging the statute as applied to him, not challenging the statute in its entirety. Thank you very much. That was helpful. Sir. So the warden started off – the ward council warden started off by saying that it's fair to say that the officer's testimony was conclusory, and that's the end of the game. If it was conclusory, it's no evidence, and there's nothing else that the jury – a rational jury could have relied on. Well, I don't know if it's conclusory. It's just – Well, it's not only conclusory. It's also incoherent because – It wasn't terribly specific as to this particular circumstance where you have members of two different gangs. He did account for it some, but – I'm thinking in terms of – for instance, he says, well, it's a brazen – brazen crimes occur at Franklin. If you read the People v. Franklin case, that's a brazen crime, and there was no gang association or benefit in that case, despite the same script that the officer there was reading off of. But he says – the officer said, well, you know, this was brazen, and they didn't – brought daylight. Well, there's no one there. They cased the area, right? Three times they drove by. If they're not concerned about being seen, why did they case the scene by driving by three times? I thought they cased it to find out if there was somebody to rob. Well, right. Perhaps, but the Gardners were – it could be. They drove by three times, and there was no evidence that anyone else was there to see them. So the idea that this was a brazen crime that was intended to – certainly made an impression on the Gardners. I would – They're not exactly a great source of cash for these guys. Right. That shows sophistication, Your Honor. It does. Yeah, I mean – It may also show the brutality of the gang, that they're willing to knock over just about anything. Or that robbers are, you know, willing to rob people. Or that they're sending a message. I mean, any robbery sends a message. The question is what the message was here, and there's no evidence that the message here – Probably robbing someone who doesn't have any money sends a different kind of message, doesn't it? Well, the message was not received here, Your Honor. So that's the – How do we know that? Because the Gardners testified, and they were unaware that there was a gang involved in this case. Thank you very much. Thank you, Your Honor. Thank you both for helpful arguments. The case of Johnson v. Montgomery will be submitted.
judges: Berzon, Bybee, Woodcock